**Margaret Danehy MAYNARD, Plaintiff,**

v.

**The UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, et al., Defendants.**

**Civ. No. 87-07550-B (GHKx).**

United States District Court,
C.D. California.

Sept. 23, 1988.

---

William E. Windham, Grand Terrace Law Center, Grand Terrace, Cal., for plaintiff.

Roger E. West, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION TO DISMISS

BREWSTER, District Judge.

### I. BACKGROUND

Plaintiff, Margaret Danehy Maynard, filed this suit against defendants, the United States District Court for the Central District of California ("Central District") and all of the Central District judges. Plaintiff has asserted numerous constitutional challenges to the enforceability of Local Rule 2.2.1 of the Central District ("Local Rule 2.2.1"). Local Rule 2.2.1 provides, in relevant part, that admission to the Bar of the Central District is "limited to persons of good moral character who are active members in good standing of the State Bar of California."

Plaintiff is an attorney licensed in the State of Indiana and admitted to practice

before the United States District Courts for the Northern and Southern Districts of Indiana. Plaintiff is a resident of California and maintains a law office within the jurisdiction of the Central District. Plaintiff seeks admission to the Bar of the Central District despite the fact that she is not a member of the State Bar of California.

On July 20, 1987, the Honorable George H. King, Magistrate of the Central District, denied the plaintiff's application for admission to the Bar of the Central District, based on the fact that she is not licensed to practice law in the State of California as mandated by Local Rule 2.2.1. Plaintiff seeks a declaratory judgment that Local Rule 2.2.1 is violative of the United States Constitution, and that she be admitted forthwith to general practice before the Central District.

Specifically, plaintiff avers that the requirement that she be licensed to practice law in the State of California as a condition to her admission before the Central District violates her rights under Article I, Section 8, Clause 3, and Article IV, Section 2, Clause 1 of the United States Constitution. In addition, plaintiff asserts that denial of her application for admission to the Bar of the Central District violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments.

On August 1, 1988, the court heard defendants' Motion to Dismiss this action under Fed.R.Civ.P. 12(b)(6).

## II. ANALYSIS

### A. *Failure to Exhaust Administrative Remedies*

■ Defendants argue that the court should stay or dismiss this action pending exhaustion by plaintiff of her administrative remedies. The defendants contend that such a result would prevent the court from unnecessarily reaching constitutional issues and would provide the Rules Committee of the Central District with an opportunity to amend Local Rule 2.2.1.

The court deems Maynard's correspondence with Chief Judge Manuel Real and Judge Harry Hupp, Chairman of the Rules Committee, to be an exhaustion of her administrative remedies. Maynard wrote to these judges requesting that Local Rule 2.2.1 be amended to permit resident attorneys licensed out-of-state to join the Bar of the Central District. The Rules Committee failed to take any action in response to Maynard's letters. The court treats this as a denial of her request. Plaintiff's next recourse was the filing of an action in federal court. Thus, plaintiff exhausted her administrative remedies.

### B. *Privileges and Immunities Clause of Article IV*

■ Maynard avers that denial of her petition for admission to the bar of the Central District constitutes an abridgement of her rights under Article IV, Section 2, Clause 1 of the United States Constitution. Specifically, Maynard alleges that Local Rule 2.2.1 unlawfully precludes her from practicing law, which she asserts is a "federally proctected [sic] privilege and immunity...." (Complaint IX).

Article IV, Section 2 of the Constitution provides that the "[c]itizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Privileges and Immunities Clause prevents "a state from discriminating against citizens of other states in favor of its own." *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Thus, the Privileges and Immunities Clause has been construed as a limitation on powers of the states and not on powers of the Federal Government. *Hawes v. Club Ecuestre El Comandante, Etc.*, 535 F.2d 140, 145 (1st Cir.1976).

The standards imposed by federal courts for admission of attorneys are matters of federal law. *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985); *Matter of Roberts*, 682 F.2d 105, 107 n. 21 (3rd Cir.1982). District Courts possess inherent authority to govern the admission of attorneys who seek to practice before them. *See e.g., Frazier v. Heebe*, 482 U.S. 641, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987); *In re Snyder*, 472 U.S. at 645 n. 6, 105 S.Ct. at n. 6.

In addition to this inherent power, federal courts are vested with express statutory authority to promulgate rules governing the admission of attorneys. 28 U.S.C. §§ 1654, 2071. 28 U.S.C. § 2071 provides in relevant part: "The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business."

■ Maynard cannot state a claim for violation of the Privileges and Immunities Clause, as Local Rule 2.2.1 is a matter of federal law legitimately administered by a federal entity. Plaintiff's Privileges and Immunities Clause claim is thus deficient as a matter of law, as State discrimination is, by definition, not possible.

Plaintiff cites a number of cases in which courts have struck down attorney admission requirements under the Privileges and Immunities Clause, to substantiate her argument that the Local Rules must similarly fall. *See Supreme Court of the State of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). However, in each of these cases, the courts were dealing with *state* laws which discriminated against *non-residents*. In the case at bar there is no state action. Furthermore, the Local Rule at issue does not discriminate on the basis of residency. Therefore, Maynard's challenge based upon the Privileges and Immunities Clause fails to state a claim upon which relief can be granted.

## C. *Commerce Clause*

■ Maynard asserts that Local Rule 2.2.1 violates her rights under the Commerce Clause of the United States Constitution in that it unlawfully prevents her from practicing "federal law" before the Central District "which does touch and concern" interstate commerce. (Complaint VIII). Whether or not plaintiff states a claim for violation of the Commerce Clause ultimately turns upon whether Local Rule 2.2.1 is derived from state or federal law.

Maynard concedes that the Federal Government cannot violate the Commerce Clause. *In re Snyder*, 472 U.S. 634, 645 n. 5, 105 S.Ct. 2874, 2881 n. 5, 86 L.Ed.2d 504 (1985); Maynard's Points and Authorities in Opposition to Motion to Dismiss at p. 22. The Commerce Clause merely restricts actions by the states which unduly burden interstate commerce or otherwise encroach upon legitimate federal authority. *White v. Massachusetts Counsel of Construction Employers*, 460 U.S. 204, 213, 103 S.Ct. 1042, 1047, 75 L.Ed.2d 1 (1983). Courts construing the Commerce Clause cannot invalidate federal legislation, even when it burdens interstate commerce. *Morgan v. Commonwealth of Virginia*, 328 U.S. 373, 380, 66 S.Ct. 1050, 1054, 90 L.Ed. 1317 (1946); *Intake Water Co. v. Yellowstone River Compact Commission*, 769 F.2d 568, 569–70 (9th Cir.1985), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). Because Rule 2.2.1 is clearly based on federal law, Maynard's Commerce Clause challenge fails to state a claim upon which relief can be granted.

## D. *Equal Protection Clause*

Maynard alleges that Local Rule 2.2.1 denies her constitutional rights under the Fifth and Fourteenth Amendments, "in that the District Court is using a discriminatory classification of the State of California to exclude attorneys licensed in other states, without sufficient federal justification for relying on such state classification." (Complaint XI).

■ To the extent Maynard's discrimination allegations are predicated upon the Fourteenth Amendment, her constitutional challenge fails to state a claim upon which relief can be granted. The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment, by its express terms, limits the actions of states rather than the actions of federal government. *See e.g., Adams v. Howerton*, 673 F.2d 1036, 1041 n. 3 (9th Cir.), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). Because plaintiff challenges a federal district court's rule, no state action is

implicated, and any reliance on the Fourteenth Amendment is misplaced. *Matter of Roberts*, 682 F.2d at 105.

To the extent Maynard's discrimination allegations are predicated upon the Fifth Amendment, her constitutional challenge still fails to state a claim upon which relief can be granted. The Fifth Amendment does not contain an equal protection clause textually identical to that contained in the Fourteenth Amendment. However, it is generally acknowledged that the Due Process Clause of the Fifth Amendment embodies an equal protection "component" similar to that contained in the Fourteenth Amendment. *See, e.g., Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 1904, 48 L.Ed.2d 495 (1976).

█ In evaluating any discrimination claim, the court must initially determine the appropriate level of scrutiny applicable to the challenged rule or government conduct. When a law disadvantages a suspect class or impinges upon a "fundamental right," the court will examine the law by applying a strict scrutiny standard. In the absence of such circumstances, the conduct or rule must be analyzed under a rational basis test. *Matter of Roberts*, 682 F.2d 105, 108 n. 3; *Lupert v. California State Bar*, 761 F.2d 1325, 1327 (9th Cir.), *cert. denied*, 474 U.S. 916, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985).

Maynard has shown neither infringement of a fundamental right nor discrimination against a suspect class which would trigger strict scrutiny. Maynard argues that the Supreme Court in *Piper* held that the right to practice law is a "fundamental right." However, *Piper* is distinguishable because it involved only the Privileges and Immunities Clause, not the Equal Protection Clause. *See Lupert*, 761 F.2d at 1327 n. 2.

Furthermore, there is no legal support for Maynard's contention that federal practitioners should be deemed a "suspect class" for equal protection purposes. Likewise, there is no legal support for the contention that the discrimination at issue should be tested under the "heightened scrutiny" analysis applied to issues of gender and illegitimacy discrimination claims.

Cases striking down bar admissions requirements under the Equal Protection Clause have found that the state's bar admission standards make *explicit* use of a suspect classification. *See, e.g., In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed. 2d 910 (1973). Certainly, it is difficult to see how the discrimination at issue in this case bears any of the earmarks of a "suspect class." One's status as a resident attorney licensed in another state does not have any of the immutable characteristics of alienage, nationality, or race. Nor can one see a situation where there has been widespread discrimination against a discrete and insular minority.

In this case, therefore, the proper standard of review is the rational basis test. In general, the court has been especially deferential to legislative classifications in cases of challenges to the state regulation of licensed professions. *See, e.g., Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910); *Ohralik v. State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed. 2d 444 (1978); *In re Griffiths*, 413 U.S. 717, 722–23, 93 S.Ct. 2851, 2855.

█ In applying the rational basis test, the court has also stressed the heavy procedural burden placed upon the plaintiff in proving her case. The plaintiff in a challenge to a legislative classification, reviewed under the rational basis standard, must prove that the facts on which the legislature may have relied in shaping the classification "could not reasonably be conceived to be true by the governmental decisionmaker." *Brandwein v. California Bd. of Osteopathic Ex'rs*, 708 F.2d 1466, 1471 (9th Cir.1983) (citing *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171). In reviewing the rationality of the classification, a court may hypothesize legislative purposes: "where there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.'" *Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

Maynard contends that there is no rational relationship between membership in the

State Bar of California and fitness to practice federal law in the district court. However, defendants provide a myriad of legitimate public policy objectives for the Bar exam requirement. First, defendants suggest that the Bar exam is a reasonable gauge for determining an applicant's fitness to practice law. Second, membership in the State Bar of California is a reasonable method of ensuring that certain ethical standards are met and maintained. Third, the Bar exam requirement ensures that attorneys practicing in the Central District are knowledgeable in California substantive law. Fourth, tying District Court admission to State Bar membership protects the public by ensuring that attorneys will make choice of forum decisions solely with their clients' best interests in mind.

Under the rational basis test, defendants have made a sufficient showing of a legitimate government interest which bears a reasonable and nonarbitrary relation to the challenged rule. *C.f. Matter of Roberts*, 682 F.2d 105 (3rd Cir.1982). The Supreme Court requires nothing more than this showing. Although Maynard suggests that other district court rules are *more* reasonably related to the Central District's articulated interests, the court need not make such a determination when applying a rational basis test. Perhaps the issue of admission to the district courts should be uniform across the United States, as plaintiff suggests. However, the appropriate forum to address such uniform admissions standards must be either Congress, the United States Supreme Court, or the District Courts themselves through the United States Judicial Conference.

### E. *Due Process Clause*

■ Maynard's final challenge to Local Rule 2.2.1 is that the Local Rule denies her substantive due process in that it prevents "substancially [sic] or equally well qualified attorneys from other states from becoming full members of the bar in defendant District Court, merely because they do not have a license to practice law in the State of California." (Complaint X).

Initially, the court must dismiss under Rule 12(b)(6) any claim plaintiff makes under the Due Process Clause of the Fourteenth Amendment. As indicated above, the decision whether to admit an attorney to practice before a federal district court is a matter of federal law. *Matter of Roberts*, 682 F.2d at 107 n. 2. Since the Fourteenth Amendment only implicates state action, the plaintiff's reliance on the Fourteenth Amendment is misplaced.

Under the Fifth Amendment's Due Process Clause, plaintiff must first establish that the property or liberty interests she asserts are subject to the protection afforded by the Due Process Clause. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

The Due Process Clause affords protection to those property interests which are created and defined by independent sources, such as statutes, legal rules, or mutually explicit understandings. *Id.* at 577, 92 S.Ct. at 2709. Maynard does not cite any rule, statute, or understanding that would support her claim of denial of a property right to practice law in the district court. Furthermore, courts have held that the right to practice law is not a property right protected by the Due Process Clause. *See Matter of Roberts*, 682 F.2d at 107; *Cf. Leis v. Flynt*, 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1978).

Nothing in Local Rule 2.2.1 implicates plaintiff's good name, reputation, honor, or integrity, or imposes any stigma or other disadvantage limiting plaintiff's employment opportunities, as would be required to support a finding of deprivation of liberty under the Due Process Clause. *See Roth*, 408 U.S. at 573–74, 92 S.Ct. at 2707.

Thus, the court should dismiss Maynard's cause of action for violation of the Due Process Clauses of the Fifth and Fourteenth Amendments for failure to state a claim upon which relief can be granted.

### F. *Conclusion*

For the above-mentioned reasons, defendants' Motion to Dismiss is hereby granted with leave to amend. Plaintiff

shall have thirty days leave to amend her complaint.

IT IS SO ORDERED.