Michael J. **PIPPEN,** Plaintiff,

v.

Saundra B. **SCALES,** James H. Deese, Alton L. Scales, Billy R. Ward, Wiley T. McRae, Jr., Leroy Adams, John H. Fountain Rhym H. Kim, Brian C. Miller, William E. Garrett, Jr., and William T. Tomlinson, Defendants.

No. 2:92CV113.

United States District Court, M.D. North Carolina, Greensboro Division.

May 17, 1993.

Michael J. Pippen, pro se.

Stanley Eric Speckhard, Alexander Ralston, Speckhard & Speckhard, Greensboro, NC, for Saundra B. Scales, James H. Deese, Alton L. Scales, Billy R. Ward & Wiley T. McRae, Jr.

Saundra B. Scales, pro se.

Perry C. Henson, Jr., Henson Henson Bayliss & Sue Greensboro, NC, for James H. Deese.

Alton L. Scales, pro se.

Billy R. Ward, pro se.

Wiley T. McRae, Jr., pro se.

Emmett Boney Haywood, James B. Richmond, N.C. Dept. of Justice, Raleigh, NC, Karl N. Hill, Jr., Joseph Robert Beatty, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, NC, for Brian C. Miller and William E. Garrett, Jr.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Senior District Judge.

This matter comes before the Court on plaintiff's Motion to Amend his complaint and defendants' Motions to Dismiss. For the reasons stated herein, the Court will grant plaintiff's Motion to amend his complaint and will also grant defendants' Motions to Dismiss.

### I.

In this pro se action, plaintiff Michael J. Pippen seeks $2,000,000.00 in monetary damages arising out of the one year suspension of his H–3 Plumbing and Heating contractor's license ("H–3 License") by the North Carolina State Board of Examiners of Plumbing, Heating, and Fire Sprinkler Contractors ("Board"). Plaintiff's complaint contains myriad claims against defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1988) ("RICO") and claims of civil rights violations under the United States Constitution and 42 U.S.C. §§ 1981, 1983 and 1985 (1988).

Named as defendants in this action are: Saundra B. Scales ("S. Scales") and Alton B. Scales ("A. Scales") for whom plaintiff installed a heating and air conditioning system; Wiley T. McRae ("McRae") for whom plaintiff installed a heating and air conditioning system; Billy R. Ward ("Ward") and James H. Deese ("Deese"), heating contractors who repaired or replaced the systems installed by

plaintiff for defendants S. Scales, A. Scales and McRae, respectively. Additionally, plaintiff named as defendants trial officer and Board member Brian C. Miller ("Miller"); Board members Leroy Adams ("Adams"), Rhym H. Kim ("Kim") and William Garrett ("Garrett") who along with other Board members conducted an evidentiary hearing resulting in the suspension of plaintiff's H–3 License; William T. Tomlinson ("Tomlinson"), an investigator for the Board, and; John N. Fountain ("Fountain"), an attorney for the Board.

Plaintiff is in the business of installing and servicing heating and air conditioning systems. Plaintiff's complaint alleges the following facts: upon receipt of a written complaint from defendant S. Scales dated March 30, 1987, the Board investigated the charges against plaintiff. On June 20, 1988, the Board sent a Notice of Hearing to plaintiff. Subsequently, the Board held an evidentiary hearing to determine if the Scales' allegations were true and determine whether plaintiff's H–3 License should be suspended or revoked for gross negligence, incompetence or misconduct. The Board had the statutory capacity to take such action pursuant to N.C.GEN.STAT. § 87–23 (1988) and N.C.AD-MIN.CODE tit. 49, r. 50.1000 *et seq.* (1988). By order dated December 16, 1988, the Board suspended plaintiff's H–3 License for a period of one year. Plaintiff subsequently appealed the suspension to a state superior court which affirmed the Board's decision.

It is exceptionally difficult to discern the exact nature of plaintiff's allegations against each of the defendants from the content of his pro se complaint. The Court will, however, attempt to address plaintiff's allegations below.

## II.

### A. *Plaintiff's Motion to Amend his Complaint*

The Court will first address plaintiff's Motion to Amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Plaintiff originally filed his complaint on February 28, 1992. Subsequently, the Court allowed plaintiff to amend his com-

plaint on March 3, 1992 as a matter of course. At present, plaintiff wishes to amend his complaint for a second time.

■ Plaintiff's original complaint is forty-nine pages in length and attempts to set forth three purported causes of action against defendants. In his present motion, plaintiff desires to amend some of the original allegations and add additional causes of action. The amendment is over forty pages in length and contains nearly three hundred paragraphs of additional allegations against defendants.

Defendants argue that the proposed amendment "is verbose and confusing and does not constitute the 'short and plain statement of the claim' envisioned by Rule 8 of the Federal Rules of Civil Procedure." Response By Defendants Adams, Fountain, Kim, Miller, Garrett, and Tomlinson to Plaintiff's Motion to Amend Complaint at 1–2, *Pippen v. Scales* (No. 2:92CV113) (hereinafter "Adams Response"). Further, defendants maintain that plaintiff's motion is not offered in good faith, but is merely a tool employed by plaintiff for harassing defendants. Response By Defendants S. Scales, Deese, A. Scales, Ward, and McRae to Plaintiff's Motion to Amend Complaint at 2, *Pippen v. Scales* (No. 2:92CV113). Finally, defendants contend that to require them to respond to such a complaint, especially for a second time, would be unduly burdensome and would result in undue prejudice against them. Adams Response at 2.

The Court tends to agree with defendants' assessment of plaintiff's present motion to amend. The original complaint as well as the present proposed amendment are exceedingly long and difficult to understand. However, because this is a pro se matter the Court will, in the exercise of its discretion, allow plaintiff to amend his complaint.

In ruling on the various defendants' Motions to Dismiss, the Court will address the assertions contained in plaintiff's original complaint as well as the first and second amendments thereto. On the basis of *all* of plaintiff's allegations, the Court will grant all defendants' Motions to Dismiss. Such being the case, the Court finds it unnecessary for

defendants to respond to the additional allegations contained in the second amendment to plaintiff's complaint.

## B. Plaintiff's Substantive Claims

In his complaint, plaintiff seeks to establish a civil RICO claim against all defendants pursuant to sections 1962(c) and 1962(d) of the RICO statute. To that end, plaintiff alleges that each defendant was guilty of any number of illegal acts which amounted to: (1) extortion in violation of 18 U.S.C. § 1951; (2) mail fraud in violation of 18 U.S.C. § 1341; (3) interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 and; (4) conspiracy to commit extortion in violation of 18 U.S.C. § 1962(d).

The defendants in this case can be logically divided into two groups. The first group consists of the customers who filed complaints against plaintiff with the Board after he installed a heating and air conditioning system in their home and the contractors who subsequently corrected the faulty installations performed by plaintiff. This group includes S. Scales, A. Scales, McRae, Ward and Deese ("Non–Board defendants"). The second group is comprised of members of the North Carolina State Board of Examiners of Plumbing, Heating, and Fire Sprinkler Contractors and its staff. This group includes Miller, Adams, Kim and Garrett who were Board members, Tomlinson, the Board's investigator, and Fountain, the Board's attorney ("Board Defendants"). The Court will address plaintiff's allegations as to each group in turn.

### 1. Board Defendants [1]

Under N.C.Gen.Stat. §§ 87–21, 87–23 (1988), the Board is empowered with both judicial and delegated legislative powers. Those powers include the ability to establish the requirements and standards for Heating and Air Conditioning license applicants and the quasi-judicial power to investigate and to revoke or suspend the license of any heating or plumbing contractor for gross negligence,

incompetence or misconduct. *See* N.C.Gen.Stat. § 87–23 (1991); N.C.Admin.Code tit. 49, r.50.1000 *et seq.* (1988).

It is settled law that the doctrine of judicial immunity shields a judge from civil liability for any act done in the exercise of his judicial function. *Stump v. Sparkman*, 435 U.S. 349, 363, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978). Prosecutors are similarly entitled to absolute immunity for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *See also, Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978) ("agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity"). Whether a person is entitled to invoke judicial or quasi-judicial immunity "depends not on the title of the officer but on whether the alleged conduct which gives rise to the complaint involved the performance of a judicial or quasi-judicial function." *Hoke v. Board of Medical Examiners*, 445 F.Supp. 1313, 1314 (W.D.N.C.1978).

In the instant case, the Board Defendants, including defendant Fountain as the Board's prosecutor, exercised their judicial authority in conducting an evidentiary hearing and rendering a decision to suspend plaintiff's H–3 Heating License. Clearly, the conduct of which plaintiff complains occurred during this process and involved the performance by each Board Defendant of a judicial or quasi-judicial function. Therefore, with the exclusion of defendant Tomlinson, the Court finds that the Board Defendants are entitled to absolute immunity and can not be civilly liable in this action under any theory put forth by plaintiff. Additionally, defendant Tomlinson is entitled to qualified immunity as an agent of the Board. Thus, since his acts in investigating the complaints against plaintiff on the Board's behalf did not violate any of plaintiff's clearly established statutory or constitutional rights, plaintiff's claims against Tomlinson must also fail.

---

**1.** Defendant Fountain and Tomlinson are not members of the Board. However, because all of plaintiff's allegations against them involve acts by them in their official capacities as prosecutor and investigator for the Board, the Court will analyze plaintiff's claims against them together with those claims against the Board Defendants who were actual members of the Board.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *See also, Bishop v. State Bar of Texas,* 791 F.2d 435, 438 (5th Cir.1986) (investigator for State Bar entitled to qualified immunity).

### 2. *Non-Board Defendants*

■ The RICO Act established, in addition to criminal penalties for racketeering activities, a private cause of action which provided for treble damages, costs and attorneys' fees for the prevailing party who was "injured in his business or property by reason of a violation of section 1962...." 18 U.S.C. § 1964(c) (1988). With the exception of the requirement of an injury to a party's "business or property," section 1964 does not identify the elements of a civil RICO action. Instead, section 1964 provides that the movant's injury must have resulted from a violation of 18 U.S.C. § 1962, the criminal provision of RICO. To establish a violation of section 1962, one must prove the commission of at least two crimes (i.e., acts of racketeering) within ten years of one another and that a pattern of racketeering exists. 18 U.S.C. §§ 1961(5), 1962 (1988). *See also, H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The Court carefully reviewed plaintiff's complaint and amendments thereto. Even accepting plaintiff's allegations as true, the Court finds that plaintiff has failed to state a cause of action against any of the defendants named in his complaint under the RICO statute. The complaint fails to properly allege the requisite racketeering activity or the existence of a pattern of racketeering activity. It is true that plaintiff discusses innumerable acts that he characterizes as mail fraud, extortion, travel and use of the mail in aid of racketeering enterprises, conspiracy, and aiding and abetting mail fraud. However, the Court finds that each of these acts, although perhaps detrimental to plaintiff and his business, were in no way illegal. In fact, in some instances the complained of acts were commendable. What plaintiff's complaint amounts to is a tirade against all those individuals plaintiff perceives wronged him during the process leading to the suspension of his H-3 License. Therefore, it is the Court's determination that plaintiff's complaint, even when viewed in the light most favorable to him, fails to state a claim against any defendant under the civil penalty provisions of the RICO statute.

In addition to plaintiff's RICO charges, he also maintains that defendants are guilty of numerous deprivations of his constitutional rights in violation of the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1981, 1983 and 1985 (1988). Specifically, plaintiff asserts that the Non-Board defendants conspired to deprive him of his H-3 License by creating fraudulent charges against him and by offering false testimony at his evidentiary hearing before the Board.

■ The Court agrees that the Non-Board defendants' complaints to the Board led to the Board's investigation of plaintiff's business. Further, it is very likely that their testimony at plaintiff's evidentiary hearing before the Board was largely responsible for the suspension of plaintiff's H-3 License. However, the Non-Board defendants' testimony before the Board is privileged. Thus, the Non-Board defendants are immune from civil liability under any theory advocated by plaintiff on the basis of this testimony. *See Hawkins v. Webster,* 78 N.C.App. 589, 592, 337 S.E.2d 682, 684 (1985) ("a civil action may not be maintained for a conspiracy to give false testimony"). Furthermore, the Non-Board defendants' complaints to the Board which led to plaintiff's evidentiary hearing in no way violated any of plaintiff's constitutionally or statutorily protected rights.

■ To maintain an action under 42 U.S.C. § 1983 (1988), plaintiff must allege deprivation of some right guaranteed to him under the Constitution or laws of the United States. *Giannini v. Real,* 711 F.Supp. 992, 1000 (C.D.Cal.1989). The right to engage in the plumbing or heating trade is not a fundamental right guaranteed by the Constitution or any laws of the United States. *Id.* (no fundamental right to practice law). Therefore, the Court will dismiss plaintiff's section 1983 cause of action for failure to state a claim upon which relief can be granted.

To maintain an action under 42 U.S.C. §§ 1981 and/or 1985 (1988), plaintiff must illustrate that there was some racial, or other class-based, invidiously discriminatory animus behind a principal actor's (§ 1981) or conspirator's (§ 1985) actions. Simply put, the actions or conspiracy must be aimed at a deprivation of the equal enjoyment of rights secured by the law to all persons. *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Plaintiff fails to allege that the Non–Board defendants were inspired in their actions by any racial or class-based motivations. Accordingly, as to the Non–Board defendants, the Court will dismiss plaintiff's section 1981 and 1985 causes of action for failure to state a claim upon which relief can be granted.

Plaintiff also alleges that he was not afforded due process in the suspension of his H–3 License. Such was not the case. The Fourteenth Amendment to the Constitution prohibits only the deprivation of property without due process of law, it does not itself create a property interest. *Richardson v. Eastover,* 922 F.2d 1152, 1156 (4th Cir.1991). "The nature and extent of the property interest is determined by 'existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Assuming, *arguendo,* that plaintiff's H–3 License was a property interest, the Court finds that constitutional due process was clearly satisfied by the Board prior to its suspension of plaintiff's license. By an official Notice of Hearing, the Board properly notified plaintiff of the Board hearing date and the charges against him. The Board conducted an exhaustive evidentiary hearing wherein the Board determined that plaintiff should forfeit his license for one year. Furthermore, he was given the opportunity to appeal the Board's decision to a state superior court. There the Board's decision was affirmed. Clearly, due process was satisfied in this instance.

Generally, the Court is solicitous to pro se plaintiffs. However, where as here, a plaintiff fails to state a bona fide cause of action in his original complaint and two amendments thereto, the Court has little choice but to dismiss his complaint. Accordingly, because plaintiff has failed to allege any legitimate cause of action against any defendant named in his complaint, the Court will grant defendants' Motions to Dismiss.

IT IS, THEREFORE, ORDERED, that defendants' Motions to Dismiss be, and the same hereby are, GRANTED, and that this action be, and the same hereby is, DISMISSED.